**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

**DOCKET NO.  301CV295CFD**

| | |
|---|---|
| ARLEANA DUFFY, | ) |
|       **PLAINTIFF** | ) |
| v. | ) |
| | ) |
| STATE OF CONNECTICUT, | ) |
| UNIVERSITY OF CONNECTICUT | ) |
| HEALTH CENTER & | ) |
| STATE OF CONNECTICUT | ) |
| DEPARTMENT OF CORRECTIONS, | )    **NOVEMBER 17, 2003** |
|       **DEFENDANTS** | ) |
| | ) |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HER OPPOSITION
TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT.**

I.    **INTRODUCTION**

The Plaintiff, Arleana Duffy ("Plaintiff"), was employed as a dental assistant by

the University of Connecticut Health Center ("UCHC"), and the Connecticut Department

of Corrections ("DOC"), commencing in September, 1999.  Plaintiff reported to Pamela

Shea, an administrator, and Dr. Michael Young, a dentist.

Beginning in December, 1999, the Plaintiff began receiving a series of

anonymous letters sent to her father's address as well as to her own unpublished

address.  At the time she received the letters, she was assigned to Osborn Correctional

Institution ("OCI"), a maximum security prison.

Plaintiff reported the incidents to Pamela Shea as well as to a Major in the DOC.

Plaintiff completed a DOC incident report.  Plaintiff also reported to Pamela Shea that

another woman who worked at the DOC had received similar letters and notes on her calendar.

Dr. Young supervised all of the technical aspects of Plaintiff's responsibilities, told her when to report to work as well as what time to leave, and had the authority to grant or deny requests for sick leave and vacation time. Dr. Young was the dentist for whom the Plaintiff worked at OCI.

Following receipt of the first letter, the Plaintiff's work environment changed as she experienced ongoing anxiety and stress, and was made to feel vulnerable, intimidated and scared. The DOC investigated the incidents and Dr. Young ultimately confessed to sending the letters and gifts to the Plaintiff. Despite Pamela Shea's recommendation that Dr. Young be dismissed because his actions were devious, cunning and precalculated, Dr. Young was merely given a ten (10) day suspension and transferred to another facility.

The Plaintiff continues to suffer anxiety and stress as a result of Dr. Young's conduct which occurred in connection with her employment in a maximum security prison. In addition, she is restricted as to the locations to which she could transfer and is prevented from attending meetings and conferences at which Dr. Young is in attendance.

II.    **LEGAL ARGUMENT**

    A.    **Summary Judgment Standard**

In deciding a motion for summary judgment, the district court is not to resolve issues of fact but only to determine whether there is a genuine triable issue as to a material fact. Howley v. Town of Stratford, 217 F.3d 141, 150 (2nd Cir. 2000) citations

2

omitted. All ambiguities and factual inferences are to be resolved in favor of the party

against whom judgment is sought. Id at 150-151.

> In determining the appropriateness of summary judgment, the court
> should not consider the record solely in piecemeal fashion, giving
> credence to innocent explanations for individual strands of evidence, for a
> jury in assessing whether there was impermissible discrimination and
> whether the Defendant's proffered explanation as a pretext for such
> discrimination, would be entitled to view the evidence as a whole. Id.

The level of proof a plaintiff is required to present in order to establish a prima

facie case of discrimination is low. De la Cruz v. N.Y. City Human Rep. Admin. DSS,

82 F.3d 16, 20 (2nd Cir. 1996).

If there is any evidence in the record from any source from which a reasonable

inference could be drawn in favor of the nonmoving party, summary judgment is

improper. Howley v. Town of Stratford, 217 F.3d 141, 151 (2nd Cir. 2000).

**B.    Plaintiff Has Articulated Sufficient Facts From Which A Reasonable
       Trier Of Fact Could Conclude That Plaintiff Was The Victim of
       Sexual Harassment**

UCHC and the DOC misstate the standard for determining whether a case of

sexual harassment by a supervisor has been articulated by the Plaintiff. The United

States Supreme Court has held that an employer is vicariously liable for sexual

harassment conducted by an employee's immediate supervisor or supervisory

employee. See Faragher v. Boca Raton, 524 U.S. 775, 807 (1998) and Burlington

Indus., Inc. V. Ellerth, 524 U.S. 742, 765 (1998).   An affirmative defense is available to

the employer if there has been no tangible employment action and the employer

exercised reasonable care to prevent and correct promptly any sexually harassing

3

behavior <u>and</u> the plaintiff/employer unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to otherwise avoid harm.  Both elements are necessary to provide the employer with the opportunity to assert the affirmative defense.  <u>Faragher</u>, 524 U.S. at 807.

Defendants simply misstate the applicable law when they assert that the Defendants should not be held vicariously liable for Dr. Young's conduct because prompt remedial action was taken immediately after the Plaintiff complained.  This does not satisfy the preconditions necessary to provide the opportunity to assert the affirmative defense.   As the Defendants did not exercise reasonable care to prevent and promptly correct any sexually harassing behavior, and the Plaintiff <u>did</u> take advantage of any available preventive or corrective opportunities provided by UCHC and the DOC, the affirmative defense which could protect the Defendants from vicarious liability for the conduct of Dr. Young is not available to these Defendants.

Defendants did not, in fact, exercise reasonable care to prevent and promptly correct sexually harassing conduct.  Although Dr. Young had never been disciplined prior to the Plaintiff's complaints, it is undisputed that he had previously engaged in sexually harassing conduct of a similar nature which was never investigated by UCHC or the DOC, despite a formal complaint by a female employee.

A formal complaint had previously been made by Marjorie Walsh, another dental assistant, and no prompt remedial action was taken.  Although Dr. Young had not been previously disciplined, that was due to the inaction of UCHC and the DOC and not to the fact that Dr. Young had never before engaged in sexually harassing conduct.  In <u>Brittell v. Department of Corrections</u>, 247 Conn 148, 171 (1998), the Court noted that

4

"an employer cannot insulate itself from responsibility for failing to take effective remedial action by claiming that it was unable to confirm the existence of harassment in circumstances in which it made little effort to do so." An inadequate investigation into a previous complaint of sexual harassment does not and should not provide the opportunity for an employer to utilize the affirmative defense articulated by the United States Supreme Court.

In Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62, 72 (2nd Cir. 2000), the Court held that "if harassment continues after complaints are made, reasonable jurors may disagree about whether an employer's response was adequate." The failure of the Defendants to undertake a prompt and appropriate investigation into the earlier complaint of sexual harassment of similar conduct could lead a reasonable jury to conclude that Defendants did not exercise reasonable care to promptly prevent and correct any sexually harassing behavior as the earlier conduct by the identical perpetrator was startlingly similar to the conduct about which Plaintiff complained.

The Plaintiff does not have to show that there is a specific basis to impute Dr. Young's conduct to the Defendants under the legal standard as articulated by the United States Supreme Court. The Defendants assert that the Defendants are only liable for the conduct of Dr. Young, even if this Court finds that he was the Plaintiff's supervisor, if Defendants knew or should have known of the harassment and failed to stop it. This standard is inapplicable to liability of an employer for the conduct of a supervisor. Rather, this is the applicable standard for sexual harassment by coworkers. The standard which is applicable to conduct by a supervisor was established by the United States Supreme Court in Faragher v. Boca Raton, 524 U.S. 775 (1998) and

5

Burlington Industries Inc. v. Ellerth, 524 U.S. 742 (1998). The cases cited by the

Defendants which predate the Faragher and Ellerth decisions are no longer good law

and should be disregarded by this Court. Employers are vicariously liable for the

sexually harassing conduct of its supervisors. There is an affirmative defense available

to employers who satisfy certain criteria. This affirmative defense is not available to

these Defendants.

In Mack v. Otis Elevator Company, 326 F.3d 116 (2nd Cir. 2003), the Second

Circuit found that a harassing co-worker was properly classified as a supervisor as the

harasser directed the particulars of the plaintiff's days and as the senior employee on

the work site, he possessed a special dominance over other on-site employees. The

Second Circuit cited approvingly to the supervisor test used in Dinkins v. Charoen

Pokphand USA, Inc., 133 F.Supp.2d 1254, 1266 (M.D. Ala. 2001) "[A]n employee is a

supervisor or agent for purposes of Title VII if he has the actual authority to ... direct

another employee's day-to-day work activities in a manner that may increase the

employee's workload or assign additional or undesirable tasks." Plaintiff worked for Dr.

Young and he supervised Plaintiff's daily technical duties, told her what time to come to

work, when to leave and could grant or deny requests for time off. Dr. Young was

Plaintiff's supervisor pursuant to the standard articulated by the Mack court.

The affirmative defense which could exculpate the Defendants from vicarious

liability for the sexually harassing conduct of Dr. Young is not only not available to the

Defendants because the Defendants failed to exercise reasonable care to promptly

correct and prevent sexually harassing conduct but also this affirmative defense is

unavailable to the Defendants as a result of Plaintiff's use of the corrective procedures

offered by the Defendants. The absence of either of the two preconditions deprives the Defendants of the opportunity to utilize the affirmative defense.

There is no dispute that the Plaintiff formally complained about Dr. Young's conduct and participated in the investigation by the DOC. The affirmative defense which is available to exculpate employers from liability for the sexually harassing conduct by supervisors is only available if the employer exercised reasonable care to promptly correct and prevent sexually harassing conduct <u>and</u> the Plaintiff unreasonably failed to utilize any preventive or corrective opportunities provided by the employer or to otherwise avoid harm. Both elements are necessary to provide the opportunity to the employer to utilize the affirmative defense. Neither element is present in the instant case. The affirmative defense is not available to these Defendants.

A reasonable jury could conclude that the response of the Defendants to the Plaintiff's complaints of sexual harassment were not adequate. Failure to terminate Dr. Young's employment following sexually harassing conduct and upon the recommendation of Pamela Shea, Dr. Young's immediate supervisor, could be deemed to be an inadequate response. A reasonable trier of fact could conclude that it was unreasonable to rely on the assurances of Dr. Young that he would not engage in sexually harassing conduct in light of his admissions that he had engaged in this illegal conduct in the past. Therefore, the sexual harassment of the Plaintiff was not his first offense. Based on these facts, Plaintiff should have the opportunity to submit her case to a jury for determination.

**C.    The Facts Support The Conclusion That The Department Of Corrections Was Plaintiff's Employer**

Defendants assert that the DOC was not the Plaintiff's employer. Such an

7

assertion ignores the facts underlying this cause of action. There is ample evidence from which a reasonable jury could conclude that the DOC was in fact the Plaintiff's employer.

Prior to being hired by the Defendants, Plaintiff was required to provide the DOC with an authorization to speak to her previous employers. The DOC conducted a security background check and clearance prior to the hire of the Plaintiff. Most significantly, the DOC has the right to reject candidates being considered for health care employment at a DOC correctional facility and to require the removal of an individual from employment at a DOC facility. Thus the DOC fully participated in hiring the Plaintiff and has the authority to terminate her employment.

After the Plaintiff was hired and, according to the Defendants, after the execution of the Memorandum of Understanding, Plaintiff received a DOC employee handbook and was required to sign an acknowledgment form. Plaintiff was required to complete a six week training program at the DOC Maloney Center for Training and Staff Development as a condition of employment.

It was the DOC and not the UCHC that conducted the investigation into the Plaintiff's complaints of sexual harassment. Prior to the respective interviews of the Plaintiff and Dr. Young, each was required to read and sign a DOC Employees' Rights and Responsibilities During An Administrative Investigation Statement. This statement informed Dr. Young and the Plaintiff that they "must answer all questions related to the performance of [his] official duties and employment in the Department of Corrections fully and truthfully. Disciplinary actions, including dismissal, may result if you fail or refuse to fully and truthfully cooperate." (Emphasis added).

8

Thus the DOC would be deemed to be the Plaintiff's employer under the test cited by the Defendants. The DOC had the authority to hire and fire, had supervisory authority and had authority to establish personnel policy which governed the Plaintiff's employment. The Defendants' reliance on <u>Kern v. City of Rochester</u>, 93 F.3d 38 (2nd Cir. 1996) is misplaced as that case does not apply to the facts underlying the Plaintiff's claims. The plaintiff in <u>Kern</u> did not demonstrate any connection between her employment and the City of Rochester beyond the existence of a contract between her employer, a union, and the City of Rochester. In contrast, Plaintiff has demonstrated that the DOC affected Plaintiff's hire, training, policies to which she was subject and potential termination.

Defendants also cite to the unreported opinion of <u>Bramwell v. University of Connecticut Health Care Center</u>, Docket No. 3:00CV 1934 (SRU) (October 23, 2003). As this opinion is unreported and Defendants did not attach a copy of the opinion to its Motion, Plaintiff is unable to discern whether the facts in the <u>Bramwell</u> case and the instant case are similar. The Plaintiff respectfully requests this Court to disregard this case.

In <u>Spirt v. Teachers Insurance & Annuity Ass'n</u>, 691 F.2d 1054 (2nd Cir. 1982), <u>vacated on other grounds</u>, 463 U.S. 1223 (1983), the Second Circuit found that a company with whom the plaintiff's employer contracted fell within the definition of employer for Title VII purposes because the employer had delegated a relevant employment responsibility to the company. In the instant case, the DOC participated in the hiring of the Plaintiff, made the Plaintiff subject to its personnel and training policies, had the authority to require the termination of Plaintiff's employment, conducted the investigation into Plaintiff's complaints of sexual harassment and had the Plaintiff and

9

Dr. Young sign statements which directly refer to employment with the DOC. As the

Spirt court found, the term "employer" as it is used in Title VII is sufficiently broad to

encompass any party who significantly affects access of any individual to employment

opportunity regardless of whether that party may be technically described as an

employer of an aggrieved individual as that term has generally been defined at common

law". Spirt, 691 F.2d 1054, 1063 citations omitted. The facts in the instant case

support the conclusion that the DOC significantly affects access of Plaintiff to

employment opportunities. Therefore, the DOC is an employer of the Plaintiff.

Based on the foregoing, there is sufficient evidence upon which a trier of fact

could reasonably conclude that the DOC was the Plaintiff's employer.

WHEREFORE, for the foregoing reasons, the Plaintiff, Arleana Duffy,

respectfully requests that the Defendants' Motion for Summary Judgment be denied.


                              Respectfully submitted,
                              The Plaintiff, By Her Attorney


                              Tani E. Sapirstein
                              Federal Bar No. 21160
                              Sapirstein & Sapirstein, P.C.
                              1341 Main Street, 3rd Floor
                              Springfield, MA  01103
                              Tel:    (413) 827-7500
                              Fax:    (413) 827-7797

November 17, 2003

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above document was served upon the following, via first class mail, postage prepaid:

Antoria D. Howard, Esq.
Assistant Attorney General
55 Elm Street
Hartford, CT 06141-0120


Tani E. Sapirstein

Date: November 17, 2003


J:\WP61\CASEFILE\Duffy\Lit\Pltff Memo in Support of Oppos to Mot for SJ.wpd

11