UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED

DOCKET NO. 301CV295CFD

U.S. DISTRICT COURT
HARTFORD, CT.

ARLEANA DUFFY, )
      PLAINTIFF )
v. )
)
)
STATE OF CONNECTICUT, )
UNIVERSITY OF CONNECTICUT )
HEALTH CENTER & )
STATE OF CONNECTICUT )
DEPARTMENT OF CORRECTIONS, )
      DEFENDANTS )
)

PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION FOR JUDGMENT ON THE PLEADINGS

I.    **INTRODUCTION**

    The Plaintiff, Arleana Duffy ("Plaintiff"), was employed as a dental assistant by the University of Connecticut Health Center ("UCHC"), and the Connecticut Department of Corrections ("DOC"), commencing in September, 1999. Plaintiff reported to Pamela Shea, an administrator, and Dr. Michael Young, a dentist.

    Beginning in December, 1999, the Plaintiff began receiving a series of anonymous letters sent to her father's address as well as to her own unpublished address. At the time she received the letters, she was assigned to Osborn Correctional Institution ("OCI"), a maximum security prison.

    Plaintiff reported the incidents to Pamela Shea as well as to a Major in the DOC. Plaintiff completed a DOC incident report. Plaintiff also reported to Pamela Shea that

another woman who worked at the DOC had received similar letters and notes on her calendar.

Following receipt of the first letter, the Plaintiff's work environment changed as she experienced ongoing anxiety and stress, and was made to feel vulnerable, intimidated and scared. The DOC investigated the incidents and Dr. Young ultimately confessed to sending the letters and gifts to the Plaintiff. Despite Pamela Shea's recommendation that Dr. Young be dismissed because his actions were devious, cunning and precalculated, Dr. Young was merely given a ten (10) day suspension and transferred to another facility.

The Plaintiff continues to suffer anxiety and stress as a result of Dr. Young's conduct which occurred in connection with her employment in a maximum security prison. In addition, she is restricted as to the locations to which she could transfer and is prevented from attending meetings and conferences at which Dr. Young is in attendance. As a result she has filed the present action, alleging inter alia that UCHC and DOC subjected her to a hostile working environment in violation of Title VII and Conn. Gen. Stat., § 46a-60.

## II.  LEGAL ARGUMENT

### A.  Defendants' Motion is Untimely

As stated in the Standing Order on Scheduling in Civil Matters, the United States District Court for the District of Connecticut has ordered that "[a]ll motions to dismiss based on the pleadings shall be filed within ninety (90) days after the filing of the complaint, the filing of the petition for removal, or the transfer of an action from another

District Court." See Standing Order on Scheduling in Civil Matters, paragraph 2(c). The Complaint in this matter was filed on February 26, 2001. The Defendants' Motion for Judgment on the Pleadings was filed on April 23, 2004, more than three years after the filing of the Complaint. As a result, the Defendants' motion should be denied as it is untimely and not filed in compliance with the Standing Order on Scheduling Civil Matters, paragraph 2(c).

    **B.**    **Defendants' Motion Would Circumvent This Court's Earlier Ruling**

Additionally, the Defendants assert that their motion for judgment on the pleadings was made pursuant to Federal Rule of Civil Procedure 12(c). See Defendants' Motion for Judgment on the Pleadings. However, the Defendants' entire argument that the Department of Corrections was not Plaintiff's employer is based upon two exhibits that are outside the pleadings, including an Affidavit with three non-pleading attachments. See Memorandum in Support of Defendants' Motion for Judgment on the Pleadings, pp. 5-6 and attached Exhibits. Fed. R. Civ. P. 12(c) states that "[i]f, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." If the Defendants are permitted to submit this Motion for Judgment on the Pleadings, which is supported with non-pleading exhibits, the Defendants' will be able to circumvent this Court's previous ruling.

On December 9, 2003, this Court refused to consider the Defendants' Motion for Summary Judgment, stating that "the defendant has not shown good cause for filing a

dispositive motion beyond the period set forth in the scheduling order as modified by subsequent motions for extensions of time." See Order of United States District Judge Christopher F. Droney, dated December 9, 2003.  Thus, if this Court does not deny the Defendant's motion as untimely pursuant to the Standing Order on Scheduling in Civil Cases, Plaintiff respectfully requests that this Court either exclude the exhibits submitted by the Defendants or treat the motion as an untimely motion for summary judgment.

### C. The Facts Support The Conclusion That The Department Of Corrections Was Plaintiff's Employer

Defendants assert that the DOC was not the Plaintiff's employer.  Such an assertion ignores the facts underlying this cause of action.  There is ample evidence from which a reasonable jury could conclude that the DOC was in fact the Plaintiff's employer.

As part of her application for employment, Plaintiff was required to complete the University of Connecticut Health Center Application for Employment, the Department of Corrections Background Information Sheet and a Connecticut Department of Corrections Release of Information Form.  See Department of Corrections Background Information Sheet, dated July 23, 1999, a copy of which is attached hereto as Exhibit "A" and Connecticut Department of Corrections Release of Information Form, dated July 23, 1999 a copy of which is attached hereto as Exhibit "B".  The Department of Corrections Background Information Sheet requires the applicant to sign that she "understand[s] that any false, inaccurate misleading or incomplete answer may result in disciplinary action including termination from State service."  See Department of

Corrections Background Information Sheet, dated July 23, 1999. The Connecticut Department of Corrections Release of Information Form authorizes the DOC to obtain information from any source "referred to in the employment application process relating to whatever in the opinion of the Connecticut Department of Correction is relevant to [the applicant's] <u>suitability for employment in the Connecticut Department of Correction</u>." <u>See</u> Connecticut Department of Corrections Release of Information Form, dated July 23, 1999 (emphasis added). Plaintiff was not offered employment until after the DOC and UCHC had completed the C.O.L.L.E.C.T. Investigation Report on Plaintiff, noting that she had "met the Department of Corrections minimum standards for the position sought." <u>See</u> C.O.L.L.E.C.T. Investigation Report, dated August 27, 1999, a copy of which is attached hereto as Exhibit "C".

In the Memorandum of Understanding between DOC and UCHC, the DOC retained "the right to question and/or reject candidates being considered for health care employment at a DOC correctional facility and reserved the right to require the immediate removal of anyone who has broken the rules and/or regulations of the correctional facility or who poses an unacceptable risk to the security of the institution. DOC may require the removal of an individual or firm employed or engaged by UCHC should DOC determine that there is a security risk posed by such individual or firm. Thus, initial and continual employment of staff will be subject to approval of the DOC Administration." <u>See</u> Addendum to the Memorandum of Understanding between DOC and UCHC, p. 4, a copy of which is attached hereto as Exhibit "D". Additionally, the DOC and UCHC agreed that employees would undergo "a security background check and clearance conducted by DOC as a requisite for initial and/or continued employment

5

in accordance with DOC Administrative Directive 2.3 "Employee Selection, Transfer, and Promotion." Id. Furthermore, DOC and UCHC agreed that employees would be required to successfully complete all orientation and training programs required for DOC employees, including the "academy" program at the Department of Corrections Maloney Center for Training and Staff Development, as a condition of employment. See Id.; See also Notice of Department of Correction Training Program, dated September 24, 2003; Duffy Dep., pp. 32-33, copies of which are attached hereto as Exhibits "E" and "F" respectively. As a result, the Plaintiff's employment was subject to the initial and continued approval of DOC. See Duffy Dep., pp. 20-21; Department of Corrections Background Information Sheet, dated July 23, 1999; Connecticut Department of Corrections Release of Information Form, dated July 23, 1999.

On September 7, 1999, Plaintiff received a letter confirming her acceptance of the position of Dental Assistant at OCI. See Letter of Employment, dated September 7, 1999, a copy of which is attached hereto as Exhibit "G". The letter informed Plaintiff that her employment would begin on September 10, 1999 and would be subject to successful completion of the six-week training program at the DOC's Maloney Center for Training and Staff Development during which she would be supervised and evaluated by DOC personnel. See Id; See also Notice of Department of Correction Training Program, dated September 24, 2003. On November 26, 1999, DOC completed a Connecticut Department of Corrections Pre-Service Orientation Performance Appraisal of Plaintiff, indicating her successful completion of the training program. See Connecticut Department of Corrections Pre-Service Orientation Performance Appraisal, completed November 26, 1999, a copy of which is attached

hereto as Exhibit "H".

On September 10, 1999, Plaintiff and Anna Lenczewski, the Human Resources Officer, completed a State of Connecticut Designation of Retirement System-Tier-Plan-Beneficiary Form, which listed "UConn Health Center/Corrections" as Plaintiff's employing agency. See State of Connecticut Designation of Retirement System-Tier-Plan-Beneficiary Form, signed and dated September 10, 1999, a copy of which is attached hereto as Exhibit "I". Also on September 10, 1999, Plaintiff was given a copy of the DOC Employee Handbook and required to sign a form acknowledging that she understood that she was responsible for reading and understanding its contents and complying with its requirements. See Acknowledgment Form; DOC Employee Handbook, a copy of which is attached hereto as Exhibit "J". As noted above, DOC had the authority to terminate the Plaintiff for violation of these rules and regulations. See Addendum to the Memorandum of Understanding between DOC and UCHC, p. 4.

Additionally, it was the DOC, and not the UCHC, that conducted the investigation into the Plaintiff's complaints of sexual harassment. After receiving the first anonymous letter, Plaintiff reported the incident to a Major in the DOC. See Duffy Dep., pp. 38-39. The Plaintiff reported the incident to Pamela Shea only after she had reported the incident to the Major. See Id., p. 39. On December 17, 1999, Plaintiff completed a Connecticut Department of Correction Incident Report. See Connecticut Department of Correction Incident Report, dated December 17, 1999, a copy of which is attached hereto as Exhibit "K". After obtaining the incident report, Major Jeff McGill notified the warden of OCI. See Deposition of Jeff McGill, dated February 8, 2002, hereinafter

7

referred to as "McGill Dep.," pp. 9-10, a copy of which is attached hereto as Exhibit "L". On December 21, 1999, the OCI Warden, Leslie E. Brooks, authorized Major Jeff McGill to conduct an Administrative Investigation into Plaintiff's December 17, 1999 Incident Report. See December 21, 1999 Memorandum from Warden Brooks to Maj. McGill, a copy of which is attached hereto as Exhibit "M". Although Pamela Shea attended the interview of Dr. Young and asked him if he wanted to resign after he admitted sending the letters to Plaintiff, Ms. Shea did not recall that she had any additional participation in the investigation conducted by Major Jeff McGill. See Shea Dep., pp. 16-17, a copy of which is attached hereto as Exhibit "N". Ms. Shea's only independent investigation of Ms. Duffy's complaint consisted of asking Dr. Young about the telephone call he allegedly received from the secret admirer. See Shea Dep., pp. 17-18, 27-28.

Additionally, prior to the investigative interviews of the Plaintiff and Dr. Young, each was required to read and sign a DOC Employees' Rights and Responsibilities During An Administrative Investigation Statement. This statement informed Dr. Young and the Plaintiff that they "must answer all questions related to the performance of [his] official duties and employment in the Department of Corrections fully and truthfully. Disciplinary actions, including dismissal, may result if you fail or refuse to fully and truthfully cooperate." See DOC Employees' Rights and Responsibilities During An Administrative Investigation Statements, signed by Dr. Young and Plaintiff (emphasis added), a copy of which is attached hereto as Exhibit "O".

Thus the DOC would be deemed to be the Plaintiff's employer based on the

facts underlying this cause of action. The DOC had the authority to hire and fire, had supervisory authority and had authority to establish personnel policy which governed the Plaintiff's employment. The Defendants' reliance on <u>Kern v. City of Rochester</u>, 93 F.3d 38 (2nd Cir. 1996) is misplaced as that case does not apply to the facts underlying the Plaintiff's claims. The plaintiff in <u>Kern</u> did not demonstrate any connection between her employment and the City of Rochester beyond the existence of a contract between her employer, a union, and the City of Rochester. In contrast, Plaintiff has demonstrated that the DOC affected Plaintiff's hire, training, policies to which she was subject and potential termination.

Defendants also cite to the unreported opinion of <u>Bramwell v. University of Connecticut Health Care Center</u>, Docket No. 3:00CV 1934 (SRU) (October 23, 2003). Like <u>Kern</u>, the facts in <u>Bramwell</u> are also distinguishable from the facts of the present action. For instance, Bramwell had been employed as a correctional nurse since 1993, six years before filing her action against UCHC and DOC. Despite her length of service with UCHC and DOC, Bramwell did not provide any evidence that, during those six years, DOC actually interacted with her as an employer. By contrast, the Plaintiff has demonstrated that the DOC played a significant role in her employment. For instance, the Plaintiff had been employed with DOC and UCHC for less than four months when she began receiving the harassing letters for Dr. Young. <u>See</u> Letter of Employment, dated September 7, 1999; Duffy Dep., pp. 37-38; December 10, 1999 letter, a copy of which is attached hereto as Exhibit "P" and envelope. During two of those four months, the Plaintiff was attending the DOC's "academy" program at the Maloney Center for Training and Staff Development. <u>See</u> Notice of Department of Correction Training

9

Program, dated September 24, 2003; Duffy Dep., pp. 32-33; Addendum to Memorandum of Understanding between DOC and UCHC, p. 4. At the Maloney Center for Training and Staff Development, the Plaintiff was supervised and evaluated by DOC employees. See Connecticut Department of Corrections Pre-Service Orientation Performance Appraisal, completed November 26, 1999. Similarly, within a few weeks of her return to OCI, the Plaintiff made a complaint of sexual harassment to both UCHC and DOC and the DOC began conducting the investigation into the Plaintiff's complaint of sexual harassment. See Deposition of Jeff McGill, dated February 8, 2002, hereinafter referred to as "McGill Dep.," pp. 9-10; December 21, 1999 Memorandum from Warden Brooks to Maj. McGill. Furthermore, as mentioned above, during the investigative interviews conducted in response to the Plaintiff's complaint, the DOC required the Plaintiff and Dr. Young to sign a DOC Employees' Rights and Responsibilities During An Administrative Investigation Statement, which notified them that they could be disciplined or terminated for failure or refusal to cooperate with the investigation. See DOC Employees' Rights and Responsibilities During An Administrative Investigation Statements, signed by Dr. Young and Plaintiff. Thus, the facts of the present action are readily distinguishable from those in Bramwell.

In Spirt v. Teachers Insurance & Annuity Ass'n, 691 F.2d 1054 (2nd Cir. 1982), vacated on other grounds, 463 U.S. 1223 (1983), the Second Circuit found that a company with whom the plaintiff's employer contracted fell within the definition of employer for Title VII purposes because the employer had delegated a relevant employment responsibility to the company. In the instant case, the DOC participated in the hiring of the Plaintiff, made the Plaintiff subject to its personnel and training policies,

10

had the authority to require the termination of Plaintiff's employment, conducted the investigation into Plaintiff's complaints of sexual harassment and had the Plaintiff and Dr. Young sign statements which directly refer to employment with the DOC. As the <u>Spirt</u> court found, the term "employer" as it is used in Title VII is sufficiently broad to encompass any party who significantly affects access of any individual to employment opportunity regardless of whether that party may be technically described as an employer of an aggrieved individual as that term has generally been defined at common law". <u>Spirt</u>, 691 F.2d 1054, 1063 <u>citations omitted</u>. The facts in the instant case support the conclusion that the DOC significantly affects access of Plaintiff to employment opportunities. Therefore, the DOC is an employer of the Plaintiff.

Based on the foregoing, there is sufficient evidence upon which a trier of fact could reasonably conclude that the DOC was the Plaintiff's employer.

## III. **CONCLUSION**

WHEREFORE, for the foregoing reasons, the Plaintiff, Arleana Duffy, respectfully requests that the Defendants' Motion for Judgment on the Pleadings be denied.

Respectfully submitted,
The Plaintiff, By Her Attorney

*[signature]*
Tani E. Sapirstein
Federal Bar No. 21160
Sapirstein & Sapirstein, P.C.
1341 Main Street, 3rd Floor
Springfield, MA 01103
Tel:  (413) 827-7500
Fax:  (413) 827-7797

Dated: April 30, 2004

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above document was served upon the following, via first class mail, postage prepaid:

Antoria D. Howard, Esq.
Assistant Attorney General
55 Elm Street
Hartford, CT 06141-0120

_____
Tani E. Sapirstein

Date: April 30, 2004

J:\WP61\CASEFILE\Duffy\Lit\Oppo to Motion for judgment.wpd