UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

DOCKET NO. 301CV295CFD

| | |
|---|---|
| ARLEANA DUFFY,<br>  PLAINTIFF<br>v.<br><br>STATE OF CONNECTICUT,<br>UNIVERSITY OF CONNECTICUT<br>HEALTH CENTER &<br>STATE OF CONNECTICUT<br>DEPARTMENT OF CORRECTIONS,<br>  DEFENDANTS | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION IN LIMINE
AND MEMORANDUM IN SUPPORT OF HER OPPOSITION TO
DEFENDANT'S MOTION IN LIMINE**

The Plaintiff, Arleana Duffy, hereby opposes the Motion in Limine of the State of Connecticut, University of Connecticut Health Center ("UCHC") and the State of Connecticut, Department of Correction ("DOC")(collectively "Defendants") to prevent the admission of testimony and exhibits regarding Dr. Michael Young's prior sexual harassment of Marjorie Walsh, an employee of DOC.

I. **FACTS**

In 1998, Dr. Michael Young, a dentist employed by the Defendants, left two anonymous, sexually harassing letters for Marjorie Walsh, a DOC Office Assistant, in Ms. Walsh's office. Additionally, Dr. Young wrote several "I ♡ U" notes on Ms. Walsh's desk calendar. Dr. Young, as a dentist, was a superior to Ms. Walsh.

On or around October 15, 1998, Ms. Walsh filed a Connecticut Department of

1

Corrections Incident Report regarding these anonymous letters. Ms. Walsh reported that on October 5, 1998, one of the letters was on her floor when she arrived at work. Ms. Walsh reported that a second letter was left on her office floor while she was on a twenty minute break on October 9, 1998. Ms. Walsh stated that the letters made her feel very uncomfortable.

Lieutenant B. Loubier, an employee of DOC, completed a follow up summary to Ms. Walsh's Incident Report. Although Lieutenant B. Loubier discovered that Ms. Walsh's office was not in direct view of the security camera, he was able to compile a list of personnel who were in the area of Ms. Walsh's office when Ms. Walsh went on her break. Although Ms. Walsh had indicated that no additional notes had been left for her since October 9, 1998, Lieutenant B. Loubier stated that he believed that "This person may have knowledge that this incident has been reported and has decided to either discontinue indefinitely or just for the time being." Lieutenant B. Loubier recommended that a handwriting comparison for any staff who were in the area of Ms. Walsh's office when Ms. Walsh went on her break be performed and that "Affirmative Action be notified of this incident." Lieutenant B. Loubier attached to his report the medical attendance sheets and duty rosters for the days on which Ms. Walsh received letters. Dr. Young was present on both days.

On October 5, 1998, Dr. Young was one of eight employees to arrive before Ms. Walsh. On October 9, 1998, the day Ms. Walsh received a letter when she went on break, only seventeen staff members entered the medical unit during the entire day and only eight of those staff members were present during the time the letter was left for Ms. Walsh. Additionally, only four staff members were present on both days at the time the letters were left for Ms. Walsh. Dr. Young was one of those four individuals. Despite the fact that Dr. Young had been present on both days during the hours that the letters were left for Ms. Walsh and was undoubtably seen on the security tapes, no one ever interviewed Dr. Young as part of an investigation into these incidents. Additionally, although Lieutenant B. Loubier indicated that he believed that the

2

perpetrator might begin this behavior again, no further investigation appears to have been conducted after Ms. Walsh indicated that she did not wish to pursue the matter.

In December of 1999, Dr. Young began sending anonymous, sexually harassing letters, which were almost identical to the letters he sent to Ms. Walsh, to Ms. Duffy, a dental assistant employed by the Defendants. Dr. Young, as a dentist, directly supervised Ms. Duffy in the performance of her duties as a dental assistant. On or around December 22, 1999, Dr. Young confessed that he sent the anonymous "love" letters to Ms. Duffy and Ms. Walsh.

## II.   **ARGUMENT**

Despite the Defendants' assertions to the contrary, Dr. Young's previous sexually harassing behavior and DOC's failure to properly respond, investigate and prevent additional occurrences are relevant to the present action. The United States Supreme Court held in Faragher v. Boca Raton, 524 U.S. 775, 807 (1998), and in Burlington Indus. Inc. v. Ellerth, 524 U.S. 742, 765 (1998), that an employer is vicariously liable for sexual harassment perpetrated by an employee's immediate supervisor or supervisory employee with higher authority. This vicarious liability is subject to an affirmative defense only if the employer can demonstrate "two necessary elements: (a) that the employer exercised reasonable care to *prevent* and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." Faragher, 524 U.S. at 807 (emphasis added). Therefore, if Ms. Duffy demonstrates that she was subjected to sexual harassment by her supervisor, Dr. Young, DOC should be held liable unless they can demonstrate that they "exercised reasonable care to prevent . . . [the] sexually harassing behavior." Id.

In the present action, there exists a question of fact as to whether the DOC exercised reasonable care to prevent Dr. Young's sexually harassing conduct. As

noted above, Dr. Young engaged in the same type of sexually harassing behavior on at least one occasion prior to his harassment of Ms. Duffy. Although DOC received a formal complaint about the prior incidents of harassment, its investigation into the previous complaint of harassment was inadequate. Although Dr. Young was one of only four employees in the office at the time the harassing letters were left for Ms. Walsh, Dr. Young was not interviewed with respect to Ms. Walsh's complaint. Additionally, although the notes were handwritten and the investigator suggested a handwriting comparison could be conducted, no handwriting comparison was conducted. As noted by the Defendants in their Motion in Limine, DOC ceased its investigation of Ms. Walsh's complaint when Ms. Walsh indicated that the letters had stopped and she did not wish to pursue the matter.

In Malik v. Carrier Corp., 202 F.3d 97 (2nd Cir. 2000), the Court noted that an employer's duty to investigate instances of sexual harassment is not "subordinated to the victim's desire to let the matter drop." Malik, 202 F.3d at 106. In Brittell v. Department of Corrections, 247 Conn. 148 (1998), the Court noted that "an employer cannot insulate itself from responsibility for failing to take effective remedial action by claiming that it was unable to confirm the existence of harassment in circumstances in which it made little effort to do so." Brittell, 247 Conn. at 171. Once an employer is aware of a combative atmosphere in the workplace, the employer has a duty to take reasonable steps to eliminate it. Id at 165 citations omitted. In Torres v. Pisano, 116 F.3d 625 (2nd Cir. 1997), a pre-Faragher case, the Second Circuit noted that an employer has a duty to other employees that takes precedence over a complaining employee's disinclination to pursue an investigation into the sexual harassment. See Torres, 116 F.3d 625. Thus, although the harassing notes stopped after Ms. Walsh made her complaint, DOC had a duty to other employees, such as Ms. Duffy, to complete an investigation into the harassment and to prevent it from reoccurring. Because DOC failed to properly investigate and take action against Dr. Young for his harassment, Dr, Young continued to subject other employees, namely Ms. Duffy, to the same sexually harassing behavior. In Whidbee v. Garzarelli Food Specialties, Inc., 223

4

F.3d 62 (2nd Cir. 2000), the Court held that "if harassment continues after complaints are made, reasonable jurors may disagree about whether an employer's response was adequate." Whidbee, 223 F.3d at 72. Therefore, Dr. Young's previous sexually harassing behavior and DOC's failure to properly respond, investigate and prevent the sexual harassment suffered by Ms. Duffy are relevant, highly probative factual issues for the jury to consider. Indeed "an employer's investigation of a sexual harassment complaint is not a gratuitous or optional undertaking; under federal law, an employer's failure to investigate may allow a jury to impose liability on the employer." Malik, 202 F. 3d at 105 citations omitted.

Contrary to the Defendants' assertion, the probative value of this relevant evidence is not "substantially outweighed by the danger of unfair prejudice, [or] confusion of the issues." Federal Rule of Evidence 403. UCHC will have ample opportunity at trial to present evidence to the jury to demonstrate that it did not have prior knowledge of Dr. Young's previous sexually harassing behavior. UCHC and DOC will also have the opportunity at trial to present evidence to the jury that they were and are separate entities. A jury should easily be able to grasp the simple concept that one defendant may have had prior knowledge and the other defendant did not. Plaintiff should not be denied the use of such relevant and highly probative evidence merely because the Defendants believe that it might be difficult for them to demonstrate the distinction between DOC and UCHC to a jury. In addition, UCHC can request that this Court provide a limiting instruction to the jury if the evidence supports such an instruction. As a result, the Defendant's motion should be denied.

### III.   **CONCLUSION**

For the foregoing reasons, the Plaintiff, Arleana Duffy, respectfully requests that this Court deny the Defendants' motion to exclude testimony and exhibits regarding Dr. Michael Young's prior sexual harassment of Marjorie Walsh, an employee of DOC.

Respectfully submitted,
The Plaintiff, Arleana Duffy,
By Her Attorney,


By: *[signature]*
Tani E. Sapirstein, Esq.
BBO #236850
SAPIRSTEIN & SAPIRSTEIN, P.C.
1341 Main Street, 3rd Floor
Springfield, MA 01103
Tel: (413) 827-7500
Fax: (413) 827-7797

Date: March 11, 2005


## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above document was served upon the following, via first class mail, postage prepaid:

Antoria D. Howard, Esq.
Assistant Attorney General
55 Elm Street
Hartford, CT 06141-0120

*[signature]*
Tani E. Sapirstein

Date: March 11, 2005


K:\WP61\CASEFILE\Duffy\Lit\Opp to Mot Limine2.wpd