**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

**DOCKET NO.  301CV295CFD**

| | |
|---|---|
| **ARLEANA DUFFY,** | ) |
| **PLAINTIFF** | ) |
| | ) |
| **v.** | ) |
| | ) |
| **STATE OF CONNECTICUT,** | ) |
| **UNIVERSITY OF CONNECTICUT** | ) |
| **HEALTH CENTER &** | ) |
| **STATE OF CONNECTICUT** | ) |
| **DEPARTMENT OF CORRECTIONS,** | ) |
| **DEFENDANTS** | ) |
| ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾ | ) |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF**
**HER MOTION FOR NEW TRIAL**

‾‾‾‾‾‾

**I. FACTUAL BACKGROUND**

**A.     The Undisputed Evidence Demonstrates That Dr. Young**
**        Was Ms. Duffy's Supervisor**

This Court instructed the jury that "Under Title VII, an individual qualifies as an employee's supervisor if the individual has the authority to undertake or recommend tangible employment decisions affecting the employee *or to direct the employee's daily activities*." See Jury Instructions, Section II (D), p. 16 (emphasis added).  The overwhelming weight of the evidence presented at trial demonstrated that Dr. Young was Ms. Duffy's supervisor, as he had the authority to direct Ms. Duffy's daily work activities as a dental assistant. While there was some contradictory evidence regarding whether Dr. Young had the authority to undertake or recommend tangible employment decisions regarding Ms. Duffy, there was <u>no</u> dispute regarding whether Dr. Young had the authority to direct Ms. Duffy's daily activities.   Every witness who testified regarding the work relationship between Ms. Duffy and Dr. Young, testified that Dr. Young had the

1

authority to direct Ms. Duffy in the performance of her daily dental duties.  The Defendants did not present any contradictory evidence regarding this issue.  Therefore, the jury reached a seriously erroneous result that was contrary to the evidence presented at trial when it found that Dr. Young was not Ms. Duffy's supervisor.[1]

The following is a description of the evidence presented at trial regarding the issue of whether Dr. Young was Ms. Duffy's supervisor:

Arleana Duffy's Testimony

During direct examination, Ms. Duffy testified that when she applied for the position as a dental assistant, she was interviewed by both Dr. Young and Pamela Shea.  Ms. Duffy stated that in her position as a dental assistant at Osborn Correctional Institute, she worked for Dr. Michael Young.  Ms. Duffy also testified that because she was a new employee, she relied on Dr. Young to teach her everything she needed to know about working in a prison environment.  For instance, she testified that he gave her instructions that she should not talk to the prisoners/patients, that she must keep her dental instruments behind her, and that she must count her instruments after seeing each prisoner/patient.  She also testified that Dr. Young told her what time she should come into work, what time she could leave work, and what time she could go to lunch.  Furthermore, Ms. Duffy testified that, as the dentist, Dr. Young told her what to do and how to do it with respect to all of her dental duties.

During cross examination, Ms. Duffy testified that she considered Pam Shea to

---

[1]A serious miscarriage of justice has resulted from the jury's erroneous and baseless conclusion.  The undisputed evidence presented at trial indicated that Ms. Duffy properly availed herself of the  preventative and corrective measures regarding sexual harassment which were provided by the Defendants.  Therefore, the affirmative defense was not available to the Defendants.  As a result, at least one of the Defendants would have been liable to Ms. Duffy if the jury had properly applied the law from this Court's  jury instructions to the evidence presented at trial concerning the issue of whether Dr. Young was Ms. Duffy's supervisor.

be one of her supervisors.  Ms. Duffy also testified that she considered Dr. Young to be her immediate supervisor. Ms. Duffy also identified Defendants' Exhibit 3,  an affidavit signed by Ms. Duffy in which Ms. Duffy stated that Pam Shea was her  immediate supervisor.

On redirect examination, Ms. Duffy reiterated that she considered both Dr. Young and Pam Shea to be her supervisors.  She also testified that Defendants' Exhibit 3 was completed in June of 2000, several months after Dr. Young had been transferred because it had been discovered that he was the individual sending her the anonymous letters.

Pamela Shea's Testimony

During direct examination, Pamela Shea testified that Ms. Duffy worked with Dr. Young on almost a daily basis in 1999.  Ms. Shea testified that Dr. Young had clinical supervisory authority over Ms. Duffy.   Ms. Shea explained that Dr. Young, as the dentist, oversaw the manner in which Ms. Duffy performed her duties as a dental assistant  on a day-to-day basis.

On cross examination, Ms. Shea testified that Dr. Young did not interview Ms. Duffy or  have any input into the decision to hire Ms. Duffy.  Ms. Shea also testified that both dentists and dental assistants reported to her, according to the chain of command at Osborn Correctional Institute in 1999.

On redirect examination, Ms. Shea identified Plaintiff's Exhibit 26, a memorandum from another Health Services Administrator, which clarified that dental assistants report directly to dentists according to the chain of command.  Ms. Shea testified that each Health Services Administrator could have different rules regarding chain of command.

3

Karen Duffy Wallace's Testimony

On direct examination, Ms. Wallace testified that, during the Loudermill meeting, Pam Shea had recommended the termination of Dr. Young's employment.  Ms. Wallace testified that Pam Shea stated several reasons for this recommendation, including that Dr. Young had taken advantage of being a supervisor to two dental assistants.

On cross examination, Ms. Wallace testified that Pam Shea was the supervisor of both Dr. Young and Ms. Duffy.

On redirect examination, Ms. Wallace reaffirmed that Pam Shea had stated that Dr. Young had taken advantage of being the supervisor of two dental assistants.  Ms. Wallace testified that her notes also contained a statement that indicated "don't know supervisory role,  co-workers."  Ms. Wallace testified that she was unsure who made this statement at the hearing, but indicated that the notation appeared in the section of her notes containing arguments made by Dr. Young's union representative at the Loudermill meeting.  Significantly, Ms. Wallace testified that Pam Shea, who stated that Dr. Young was a supervisor of two dental assistants,  would have been in a position to know whether Dr. Young had acted as Ms. Duffy's supervisor.

Dr. Michael Young's Testimony

On direct examination, Dr. Young testified that Ms. Duffy was a dental assistant assigned to him in 1999.  During his testimony, Dr. Young attempted to avoid any admission that he directed Ms. Duffy's technical work performance by saying that he expected dental assistants to have training and experience in their duties.  However, he begrudgingly testified that if the dental assistants had questions in the realm of dentistry, he was the one who would tell them what to do.

Dr. Young identified Plaintiff's Exhibit 30, a request for vacation time made by a dental assistant.  The request for time off was addressed to Dr. Michael Young.

4

Additionally, Dr. Young signed and stamped the request for vacation time. Nevertheless, Dr. Young testified that he did not have the authority to approve the request for vacation time. Dr. Young testified that he was asked to sign Exhibit 30, but he could not remember who asked him to sign it. Dr. Young testified that Pam Shea might have asked him to sign the request for vacation time. However, he could not say why she would have asked him to sign it.

Dr. Young also identified Plaintiff's Exhibit 31, a request for time off for work education made by a dental assistant. The request for time off was addressed to Dr. M. Young. Additionally, Dr. Young signed and stamped the request for time off. Nevertheless, Dr. Young testified that he did not approve the request for time off. Dr. Young testified that he signed Exhibit 31 at the direction of the Health Services Administrator. However, he could not say why the Health Services Administrator would not have signed it herself.

Dr. Young testified that he did not tell Ms. Duffy when to come to work or when to leave. He stated that hours of work were set by the University of Connecticut. Dr. Young also stated that dental assistants would be able to go to lunch when the morning procedures were completed.

On cross examination, Dr. Young admitted that he had discussed Ms. Duffy with Pam Shea during Ms. Duffy's hiring process, but could not recall whether he had interviewed Ms. Duffy. Significantly, Dr. Young admitted that he had authority over what the dental assistants do in the field of dentistry. Finally, Dr. Young acknowledged that he had evaluated Ms. Duffy's work performance by testifying that he thought Ms. Duffy's work performance was "fine" and never had any complaints regarding her work performance.

Therefore each individual witness who testified on the issue of whether Dr. Young was Ms. Duffy's supervisor testified that Dr. Young oversaw Ms. Duffy's day to

day activities as a dental assistant.  There was <u>no</u> contradictory evidence offered at trial as to this issue, and the jury should have followed the instructions and found that Dr. Young was Ms. Duffy's supervisor because he directed Ms. Duffy's day to day activities.

**B.    It Is Undisputed That Defendants Knew Of The Sexual Harassment And Failed To Take Remedial Action**

Question number 4 of the Verdict Form asked "Do you find that the employer(s) knew or should have known, about the harassment but failed to take appropriate remedial action?" <u>See</u> Verdict Form, Question 4,  p. 2.   To this question, the jury responded, "No."  This conclusion was against the strong weight of the evidence and resulted in a miscarriage of justice.  The undisputed evidence showed that the University of Connecticut Health Center ("UCHC") was aware of Marjorie Walsh's complaint of sexual harassment in 1998 and failed to take any preventative or corrective action at that time.  It is similarly undisputed that the Department of Corrections ("DOC") was aware of Majorie Walsh's complaint of sexual harassment in 1998.  The undisputed evidence indicates that, despite being aware of the sexually harassing conduct in 1998, the DOC failed to complete an  investigation into the sexual harassment.  Because of the failure of the DOC and UCHC to take proper action upon notification of Marjorie Walsh's complaint of sexual harassment in 1998, Dr. Young continued his harassing behavior and was able to  subject Ms. Duffy to sexual harassment.

The following is a description of the evidence presented at trial regarding whether the Defendants knew of the harassment in 1998 and failed to take appropriate remedial action:

<u>Pam Shea's Testimony</u>

Pam Shea stated twice during cross examination that she was aware <u>in 1998 </u>of Marjorie Walsh's complaints of sexual harassment.  Although Pam Shea testified that

6

she was Marjorie Walsh's supervisor at the time, she stated that she did not speak directly to Marjorie Walsh about her complaint.

Marjorie Walsh Orduz's Testimony

Marjorie Walsh testified that she complained to Lt. Loubier regarding the harassing, anonymous letters and notes that she received. Ms. Walsh also testified that, with the help of Lt. Loubier, she completed an incident report based on her complaints. Ms. Walsh testified that she and Lt. Loubier reviewed a videotape from the surveillance camera located outside of her office. Ms. Walsh testified that the videotape revealed that, at the time one of the letters was left for her, no one came into or out of the office and that Dr. Young was already in the office.

Capt. Bernard Loubier's Tesimony

Captain Bernard Loubier testified that Marjorie Walsh informed him of the anonymous notes and letters she received. Capt. Loubier testified that he instructed Ms. Walsh to complete an incident report regarding her complaints. Captain Loubier identified Plaintiff's Exhibit 21, an incident report regarding Ms. Walsh's complaint, dated October 21, 1998. Capt. Loubier indicated that he completed Exhibit 21 based on Ms. Walsh's statements and a preliminary investigation that he conducted.

Capt. Loubier stated that as part of his preliminary investigation, he reviewed a security videotape to identify the staff going into or out of the office when one of the letters was left for Ms. Walsh. Capt. Loubier testified that he thought he remembered that Dr. Young could be seen in the corridor near Ms. Walsh's office. Additionally, Capt. Loubier testified that he compiled a list of individuals who were in the office at the time the letters and notes were left for Ms. Walsh. However, Capt. Loubier testified that he did not conduct any interviews of the staff.

Capt. Loubier testified that he recommended an investigation into the incidents and suggested that a handwriting comparison be performed. Nevertheless, Capt.

7

Loubier testified that he was not aware whether any investigation was ever conducted into Ms. Walsh's complaints.  Additionally, Capt. Loubier testified that, if any investigation into Ms. Walsh's complaints was ever conducted, he had not been involved in the investigation.  There was no evidence offered by the Defendants that any investigation had been conducted into Ms. Walsh's complaints.  It is undisputed that both Defendants had actual knowledge of the conduct and no investigation was ever conducted.

Therefore the conclusion reached by the jury that the Defendants did not know or should have known about the harassment but failed to take appropriate action is erroneous, and unsupported by any trial evidence.

## II.  PROCEDURAL HISTORY

On or about June 5, 1999, Ms. Duffy filed a charge of discrimination with the Connecticut Commission on Human Rights and Opportunities ("CHRO") and with the Equal Employment Opportunity Commission ("EEOC") against UCHC, DOC, and Dr. Michael Young.   On or about June 14, 1999, Plaintiff filed amended charges of discrimination with the CHRO and EEOC against UCHC and DOC.  Counsel for Ms. Duffy received  releases of jurisdiction from CHRO on November 30, 2000, only for her claims against UCHC and DOC.  Counsel for Ms. Duffy received a right to sue letter from the Department of Justice, dated February 22, 2001, for her claims against UCHC and DOC.

On or around February 26, 2001, Ms. Duffy filed a complaint with this Court against UCHC and DOC, alleging that UCHC and DOC subjected her to gender discrimination and sexual harassment in violation of Title VII and Conn. Gen. Stat., § 46a-60.  At the pretrial conference on February 28, 2005, Ms. Duffy indicated that she intended to proceed only with her Title VII claims based on hostile work environment sexual harassment.

Commencing on April 4, 2005, Ms. Duffy's claims under Title VII against UCHC and DOC were tried before a jury. On April 6, 2005, at the conclusion of all the evidence, this Court submitted Ms. Duffy's claims to the jury.

The Court instructed the jury, inter alia, that "Under Title VII, an individual qualifies as an employee's supervisor if the individual has the authority to undertake or recommend tangible employment decisions affecting the employee *or to direct the employee's daily activities*." See Jury Instructions, Section II (D), p. 16 (emphasis added).

On April 6, 2005, the jury returned its verdict on the verdict form. The first question on the verdict form stated "Do you find that Arleana Duffy was subjected to a hostile work environment due to the sexual harassment by Dr. Young?" See Verdict Form, Question 1, p. 1. To this question, the jury responded, "Yes." The second question on the verdict form stated, "Do you find that Dr. Young was Arleana Duffy's supervisor?" See Verdict Form, Question 2, p. 1. To this question, the jury responded, "No." This negative response directed the jury to question number 4. Question number 4 of the Verdict Form asked "Do you find that the employer(s) knew or should have known, about the harassment but failed to take appropriate remedial action?" See Verdict Form, Question 4, p. 2. To this question, the jury responded, "No."

On April 7, 2005, this Court entered judgment for UCHC and DOC.

### III. LEGAL ARGUMENT

A.    **The Jury's Conclusion That Dr. Young Was Not Ms. Duffy's Supervisor Is Clearly Erroneous**

The Second Circuit has repeatedly held that a motion for a new trial under

9

Federal Rule of Civil Procedure 59 should be granted when, in the opinion of the district court, the jury has reached a seriously erroneous result or the verdict is a miscarriage of justice.  See Song v. Ives Laboratories, Inc., 957 F.2d 1041, 1047 (2nd Cir. 1992) (citations omitted).  The standard to be applied under Fed. R. Civ. P. 59 differs from that to be applied under a motion for judgment n.o.v. in that in considering a motion for a new trial, "a trial judge is free to weigh the evidence himself and need not view it in the light most favorable to the verdict winner."  DLC Management Corp. v. Town of Hyde Park, 163 F. 3d 124, 133-134 (2nd Cir. 1998).   "A new trial may be granted even if there is substantial evidence to support the jury's verdict." Id.  A new trial may be granted "when the jury's verdict is against the weight of the evidence."  Id.

In the instant case, it was undisputed that Dr. Young oversaw Ms. Duffy's daily activities as she assisted him in dental procedures on inmates.  On that issue, the testimony of all individuals with knowledge of Ms. Duffy's daily activities: Ms. Duffy, Dr. Young, and Ms. Shea was consistent.  The jury instructions expressly stated that Dr. Young was Ms. Duffy's supervisor as a matter of law if he directed her daily activities. Despite this clear instruction and undisputed evidence that Dr. Young directed Ms. Duffy's daily activities, the jury found that Dr. Young was not Ms. Duffy's supervisor. There was no evidentiary basis for this conclusion.

The standard under Rule 59(a) is less stringent than that under Rule 50.  To order a new trial under Rule 59, the district court must "conclude that the jury has reached a seriously erroneous result or the verdict is a miscarriage of justice, i.e. it must view the verdict as against the weight of the evidence."  Manley v. Ambase Corp., 337 F. 3d. 237, 245 (2nd Cir. 2003) (quoting DLC Management Corp., 163 F. 3d. at 133; Song 957 F. 2d. at 1047) (internal citations omitted).  As noted above, in evaluating a motion for new trial pursuant to Rule 59, a judge is free to weigh the evidence.  See Id. The judge is not bound to review the evidence in the light most favorable to the non-movant.  See Id.  Based on the uncontroverted evidence at trial, Ms. Duffy respectfully submits that the jury's conclusion that Dr. Young was not Ms. Duffy's supervisor is

clearly erroneous.  Such conclusion resulted in a miscarriage of justice: a defense verdict.

In <u>Bevevino v. Saydjari</u>, 574 F.2d 676, 684 (2nd Cir. 1978), the Second Circuit set forth the following criteria to be employed by a district court in deciding a Rule 59 motion:

> The trial judge, exercising a mature judicial discretion, should view the verdict in the overall setting of the trial; consider the character of the evidence and the complexity or simplicity of the legal principles which the jury was bound to apply to the facts; and abstain from interfering with the verdict unless it is quite clear that the jury has reached a seriously erroneous result.  The judge's duty is essentially to see that there is no miscarriage of justice.  If convinced that there has been then it is his duty to set the verdict aside; otherwise not.  <u>Id.</u> at 684.

In <u>Koerner v. Club Mediterranee, S.A.</u>, 833 F. Supp. 327, 331 (S.D.N.Y. 1993), the district court , applying the <u>Bevevino</u> criteria, ordered a new trial as its analysis of the trial record supported the defense contention that the jury ignored an instruction and that its finding was against the weight of the evidence and testimony presented to them.

In the present action, the jury's conclusion that Dr. Young was not Ms. Duffy's supervisor was seriously erroneous in light of this Court's instructions that an individual qualifies as an employee's supervisor if the individual has the authority to direct the employee's daily activities.  This conclusion  was not just against the strong weight of the evidence, but also directly contrary to <u>all</u> of the evidence and testimony presented to it at trial.  Because there was, in fact, <u>no</u> evidentiary basis to support the jury's conclusion, a new trial should be ordered to avoid a miscarriage of justice.  <u>See Bevevino</u>, 574 F.2d at 684.

11

B.    **The Jury's Conclusion That Defendants Did Not Know Or Have**
      **Reason To Know Of The Harassment And Failed To Take Remedial**
      **Action Is Clearly Erroneous**

The evidence that both the DOC and the UCHC knew about the earlier
harassment of Marjorie Walsh Orduz and failed to take remedial actions is undisputed.
Ms. Walsh reported the conduct and filed a report.  She viewed surveillance tapes with
Lt. Loubier.  Lt. Loubier, an employee of the DOC, testified that he had knowledge of
the incident and recommended an investigation.  No evidence was produced that the
DOC was not aware of the incidents involving Ms. Walsh.  Despite the recommendation
of Lt. Loubier, no investigation into the conduct was undertaken.  There was no
evidence produced that any preventative or corrective action was taken by the DOC in
1998 despite its knowledge of the inappropriate and illegal conduct.

On cross examination by defense counsel, Pam Shea twice testified that she
was aware of the conduct involving Ms. Walsh in 1998.  She further testified that
"everyone knew" about the incidents at the time they occurred.  Additionally, the
undisputed evidence showed that despite Ms. Shea's knowledge that Ms. Walsh, one
of her subordinates, was subjected to this conduct, she did not even speak to Ms.
Walsh about the conduct, much less conduct an investigation.  Ms. Shea was a
supervisory employee of UCHC.  As her testimony that she was aware of the conduct is
undisputed, the conclusion of the jury that the Defendants did not know or have reason
to know of the harassment is not supported by any evidence and is therefore seriously
erroneous.

As noted above, a motion for a new trial may be granted "when the verdict is
against the weight of the evidence."  DLC Management Corp. v. Town of Hyde Park,
163 F. 3d 124, 133 (2nd Cir. 1998). In evaluating a motion for a new trial pursuant to
Rule 59, "[t]he trial judge is free to weigh the evidence himself and need not view it in
the light most favorable to the verdict winner." Bevevino v. Saydjari, 574 F.2d 676, 684

(2d Cir.1978) (citation omitted).  Additionally, if the trial judge finds that the jury verdict results in a miscarriage of justice, it is his duty to set aside the verdict.  See Id.

    In the present action, supervisory employees of both the DOC and UCHC testified that they were aware of the conduct towards Ms. Walsh in 1998.  Thus, the conclusion that either the DOC or UCHC did not know of the harassment is unsupported by any evidence.  Similarly the evidence was undisputed that the DOC and UCHC failed to take remedial measures in 1998 to prevent the reoccurrence of the harassing conduct.  As a result, Dr. Young was permitted to continue his harassing conduct and subject Ms. Duffy to a hostile work environment due to sexual harassment.[2]  Therefore, the jury's response to Question 4 of the Verdict Form was against the weight of the evidence.

    As there is no evidence to support the jury's conclusions that Dr. Young was not Ms. Duffy's supervisor or that the Defendants did not know of the harassment and failed to take remedial action, a new trial should be granted to prevent a miscarriage of justice.  See Bevevino, 574 F.2d at 684.

Respectfully submitted,
The Plaintiff, By Her Attorney

_____

Tani E. Sapirstein, Esq.
Federal Bar No. 21160
Sapirstein & Sapirstein, P.C.
1341 Main Street, 3rd Floor
Springfield, MA  01103
Tel:   (413) 827-7500
Date:  April 14, 2005                   Fax:   (413) 827-7797

_____

[2]The jury concluded that Ms. Duffy was subjected to a hostile work environment due to the sexual harassment by Dr. Young.   See Verdict Form, Question 1,  p. 1.

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the above document was served upon the following, via first class mail, postage prepaid:

Antoria D. Howard, Esq.
Assistant Attorney General
55 Elm Street
Hartford, CT 06141-0120

_____
Tani E. Sapirstein

Date: April 14, 2005

A:\Memorandum In Support of Motion for New Trial.wpd

14