**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| ARLEANA DUFFY | : | CIVIL NO. 3:01CV295 (CFD) |
| *Plaintiff,* | : | |
| | : | |
| v. | : | |
| | : | |
| STATE OF CONNECTICUT UNIVERSITY OF | | |
| CONNECTICUT HEALTH CENTER AND THE | | |
| STATE OF CONNECTICUT, DEPARTMENT OF | | |
| CORRECTION | : | |
| *Defendants* | : | APRIL 20, 2005 |

**OBJECTION TO PLAINTIFF'S MOTION FOR NEW TRIAL AND MEMORANDUM
IN SUPPORT THEREOF**

**1.      INTRODUCTION**

The plaintiff has filed a Motion for a New Trial alleging that the Jury Verdict Form was

erroneous and against the weight of the evidence presented at trial.  A motion for a new trial

may be granted where in the opinion of the Court, the jury reached a seriously erroneous result

or the verdict was a miscarriage of justice.  See Song v. Ives Labor, Inc. 957 F. 2d 1041, 1047

(2d Cir. 1992).   A new trial may also be granted when the jury's verdict is against the weight of

the evidence.  See Dunlap-McCuller v. Riese Organization, 980 F.2d 153, 157 (2d Cir. 1992);

Metromedia Co. v. Fugazy, 983 F.2d 350, 363 (2d Cir. 1992).   The defendants respectfully

object to said motion and contend that the plaintiff has failed to show that the jury reached a

seriously erroneous result or that the jury's verdict was against the weight of the evidence,

resulting in a miscarriage of justice.  Therefore, plaintiff's motion should be denied.

2.    **ARGUMENT**

    a.    **There Was Disputed Evidence That Dr. Young Acted As Plaintiff's Supervisor**

Plaintiff alleges that there was undisputed evidence demonstrating that Dr. Young was the plaintiff's supervisor. The defendants contend that this is not the case. The plaintiff testified that Dr. Young was her supervisor in all respects. Ms. Shea testified that she was the plaintiff's, as well as Dr. Young's supervisor. Ms. Shea also testified that Dr. Young oversaw the plaintiff's dental work on the two to three days he worked at the Osborn Correctional Institution. Ms. Duffy Wallace also testified that she considered Dr. Young a co-worker and not a supervisor, which is evident by the Last Chance Agreement. <u>See</u> Attachment 1, Plaintiff's Exhibit 29, Paragraph 1. Dr. Young testified that Ms. Duffy was proficient in her work and he provided little, if any, direction to the plaintiff.

Despite her testimony, the plaintiff considered Pam Shea her immediate supervisor, which is evident in two documents she completed prior to the filing of this lawsuit. <u>See</u> Attachments 2 and 3, Defendant Exhibits 3 and 14. With regard to Defendant Exhibit 3, plaintiff attempts to justify why she listed Pam Shea as her supervisor, in that the affidavit was signed after she knew Dr. Young had been writing the letters; thus he was no longer her supervisor. However, it should be noted that Defendant Exhibit 14 was written on December 21, 1999, prior to the plaintiff becoming aware that Dr. Young had written the anonymous letters. Plaintiff still lists Pam Shea as her supervisor on this document. It should also be noted that the plaintiff did not report the letters to Dr. Young, as her supervisor. She reported the anonymous letters to Pamela Shea.

In determining whether Dr. Young was the plaintiff's supervisor, the jury was instructed to consider whether the "the individual has authority to undertake or recommend tangible employment decisions affecting the employee or to direct the employees daily activities." <u>See</u> Jury Instructions, Section II (D), p. 16.   There was no dispute that Dr. Young could not undertake or recommend tangible employment decisions affecting the plaintiff.  The defendants contend that "daily activities", as listed in the jury instructions can be construed broadly and can include such things as the employees daily comings and goings.  The defendants further contend that this term was construed broadly by the jury.  It is also important to note that Dr. Young was not the dentist assigned to Osborn on a **daily** basis.  He was also assigned to the Northern Correctional Institution, thus splitting his work week.

The plaintiff testified that in addition to Dr. Young directing her in everything she did, she also testified that Dr. Young was responsible for granting her time off and directing her daily work hours.  Dr. Young, in addition to testifying that he did not have to direct the plaintiff in her daily dental work, testified that he had no control over the plaintiff's daily work schedule.  There was no evidence presented that Dr. Young had ever granted or denied time off for the plaintiff.  Plaintiff Exhibits 30 and 31 were requests for time off made by another dental assistant, Pam Fairhurst.  Dr. Young testified credibly, on direct and cross examination that he did not grant the time off, but was directed by his supervisor, Pam Shea to sign the forms.

It is evident that the issue of supervision was a disputed issue and the jury chose to believe the testimony of Dr. Young and not that of the plaintiff.  Credibility determinations, the weighing of evidence and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.  <u>See</u> <u>Otero v. Bridgeport Housing Authority</u>, 297 F.3d 142, 151 (2d Cir. 2002);  <u>see</u> <u>also</u> <u>Presley v. United States Postal Service</u>, 317 F. 3d 167, 178 (2d Cir. 2003)

("The ultimate decision as to all witnesses' credibility and as to the persuasive force of their testimony is for the trier of fact, as is the ultimate determination of damages, subject only to the outer limits of reasonableness.").  The jury found that Dr. Young had no authority to affect any employment decisions with regard to Ms. Duffy and that he did not direct plaintiff's daily activities.  There is no evidence that the jury erred in its decision and as such, plaintiff should not be entitled to a new trial on this ground.

     **b.**     **<u>The Jury Properly Found That The Defendant's Did Not Know or Should Have Known About The Harassment, But Failed To Take Appropriate Remedial Action.</u>**

Plaintiff argues that because of the incidents involving Marjorie Walsh, the jury erred with regard to Question No. 4 on the Jury Verdict Form, i.e., whether the employer(s) knew, or should have known, about the harassment but failed to take appropriate remedial action.  The plaintiff 's entire argument is based on her belief that the defendants knew that Dr. Young was responsible for sending the letters to Marjorie Walsh in 1998, and/or that the defendants should have known it was Dr. Young, and were negligent in failing to discover this.

Captain Loubier testified that he had conducted and completed a preliminary investigation when Ms. Walsh expressed a desire not to pursue her complaint.  It is undisputed that it was not known at the time that Dr. Young was responsible for sending the letters to Ms. Walsh.  Although Ms. Walsh testified that she suspected Dr. Young, her statement given to Major McGill, a year later, contradicts her testimony.  In the statement she admits that she did not know at the time who had been sending the letters.  <u>See</u> Attachment 4, Plaintiff Exhibit 20**.** It is also undisputed that Ms. Walsh never complained to her employer, the University of Connecticut Health Center.  Pam Shea testified that she had heard "through rumors" of the

letters to Ms. Walsh, but she never received a formal complaint.  It is also undisputed that Ms. Walsh had stopped receiving the notes and letters when she informed Captain Loubier that she did not want to proceed with the investigation.  Even if the defendants had a duty to Ms. Walsh, that duty was to stop the alleged harassment, and it had stopped.  See Burlington Indus. v. Ellerth, 524 U.S. 742, 759; see also Distasio v. Perkin Elmer Corp., 157 F.3d 55, 64 (2d Cir. 1997).  It was also undisputed that the defendants did not know that Dr. Young was writing the letters to Ms. Walsh in October 1998 until he admitted it on December 23, 1999.  Therefore, there were no disputed issues as to whether the employers knew or should have known that Dr. Young was responsible for the letters sent to Ms. Walsh and whether the defendant knew or should have known that  Dr. Young would ultimately send letters to Ms. Duffy.

It is undisputed that the defendants did not know about the alleged sexual harassment of the plaintiff until December 17, 1999 when she reported it.  After this date, an investigation was conducted, Dr. Young was disciplined, and the plaintiff received no further letters and candy.  The jury found that the defendants took the appropriate remedial action.

The defendants contend that the jury did listen to and consider the testimony of the witnesses concerning the Marjorie Walsh incident; and found that the defendants acted appropriately in this regard.  Reasonable minds may disagree with a jury verdict; however the verdict was not clearly erroneous. See Holt v. Home Depot, U.S.A., Inc. 2004 U.S. Dist. LEXIS 824 (D. Conn. January 22, 2004), aff'd  at 2005 U.S. App. LEXIS 5706 (2d Cir. 2005) ("The jury's verdict may be fairly debatable, as many verdicts are, but by no means is it clearly erroneous or unjust"). The jury's findings in this regard are not against the weight of the evidence and did not result in a miscarriage of justice.  As such the jury verdict should not be set aside.

**3.**    **<u>CONCLUSION</u>**

For the foregoing reasons, the defendants request that the Court deny the plaintiff's

Motion for a New Trial.

DEFENDANTS

UCONN HEALTH CENTER, ET AL.

RICHARD BLUMENTHAL
ATTORNEY GENERAL

_____

BY:    Antoria D. Howard
       Assistant Attorney General
       55 Elm Street
       Hartford, CT 06141-0120
       Tel.:  (860) 808-5340
       Fax:  (860) 808-5383
       Federal Bar No. Ct #17494
      E-Mail:Antoria.Howard@po.state.ct.us

## CERTIFICATION

I hereby certify that a copy of the foregoing was mailed this _____ day of April 2005,

first class postage prepaid, to:

> Tani E. Sapirstein, Esq.
> Sapirstein & Sapirstein, P.C.
> 1341 Main Street
> Springfield, MA  01103

_____
Antoria D. Howard
Assistant Attorney General